## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| **DANIEL RUSK,** )<br>)<br>    **Plaintiff,** )<br>)<br>**v.** )<br>)<br>**CITY OF HUNTSVILLE, JUSTIN** )<br>**BARCLAY,** )<br>)<br>    **Defendants.** ) | **Case No.: 5:21-cv-00644-LCB** |

## BRIEF IN SUPPORT OF MOTION TO DISMISS
## OF DEFENDANT JUSTIN BARCLAY

### I.    Background

According to the complaint, Plaintiff Daniel Rusk is an evangelical Christian who seeks to convey his faith to others through street preaching along with his wife. (Doc. 1 ¶¶ 11-12). Plaintiff alleges that he uses a "personal hand-held voice amplifier" to amplify his voice during his street preaching. (Id. at ¶ 17).

In 2020, Plaintiff sought to preach on public sidewalks in front of the "Alabama Women's Center, LLC (AWC) abortion clinic," "the Hooters restaurant," and "Twin Peaks restaurant," all of which are located within Huntsville, Alabama. (Id. at ¶¶ 26, 45, 53, 56, 83). He claims that Huntsville Ordinance § 12-297(a), which "prohibits amplified noise audible from 25 feet away," hampered his ability to convey his message. (Id. at ¶¶ 37-38). Plaintiff was never arrested or cited for

violating § 12-297(a). [1] However, Plaintiff alleges that he wishes to use amplification that can be heard from greater than 25 feet away, and he has sued Sergeant Barclay in his official *and individual* capacities (Doc. 1, at ¶ 10), claiming that Sergeant Barclay's enforcement of § 12-297(a) within the line and scope of his employment as a City Police Officer during the year 2020 violated Plaintiff's constitutional rights.

The complaint is vague when it comes to the number and nature of Plaintiff's interactions with Sergeant Barclay. At various points in the complaint, Plaintiff refers to interactions with unidentified "Huntsville Police Officers" (Doc. 1, at ¶¶ 39, 42, 43, 49, 50, 64, 65, 67, 68, 87, 90). Sergeant Barclay is first identified by name in paragraph 71 of the complaint, wherein it is alleged that Sergeant Barclay joined an ongoing conversation between Plaintiff and another officer outside Hooter's restaurant, who was in the process of explaining the City's 25-foot rule and expressing his lack of any desire to arrest Plaintiff. (Id. at ¶71). However, the complaint does not describe any words, statements, or actions specific to Sergeant

---

[1] During the time period at issue in the complaint, § 12-297(a) provided, in pertinent part: "No person shall operate or cause to be operated any sound amplification system, either in a motor vehicle or separate from a vehicle, on any public premises so as to produce an audible sound measured at least 25 feet from the system." Section 12-297(a) has since been amended in a manner that renders it solely applicable to vehicle sound systems; in other words, it no longer applies to the speech at issue here. (Ex. __ [Ordinance No. 21-449]). Plaintiff's counsel has reviewed this new ordinance and, in a filing with the Court, has conceded that the amendment of this ordinance mooted his request for injunctive relief. (See Doc. 12); see also, e.g., Tanner Advert. Grp., L.L.C. v. Fayette Cty., GA, 451 F.3d 777, 790 (11th Cir. 2006) (noting that where an amendment to an ordinance "remove[s] challenged features" of the previous ordinance, a request for an injunction as to the previous ordinance is moot.); Lewis v. Cont'l Bank Corp., 494 U.S. 472, 479-81 (1990) (declaratory relief unavailable when allegedly unconstitutional ordinance repealed).

Barclay in connection with this encounter. (Id. at ¶¶ 71-80). Sergeant Barclay's name next appears in paragraph 103 of the complaint, wherein it is again alleged that he joined an ongoing conversation with Plaintiff, this time outside the Twin Peaks restaurant. (Id. at ¶ 103). Sergeant Barclay is alleged to have asked Plaintiff "what was going on." (Id.). The complaint then goes on to state that Sergeant Barclay and Plaintiff had a brief conversation about the terms of § 12-297(a), and that Plaintiff expressed his view that the ordinance was unconstitutional. (Id. at ¶ 113). The complaint describes Sergeant Barclay as telling Plaintiff "that he was sorry" that Plaintiff felt the law was unconstitutional (id. at ¶ 114), but that Plaintiff had the "responsibility" to comply. (Id. at ¶ 106). The complaint states that Sergeant Barclay then left the area without himself issuing any sort of citation to Plaintiff or making any sort of arrest. (Id. at ¶¶ 115-118).

This is the last mention of Sergeant Barclay in the complaint. The complaint then goes on to describe various efforts Plaintiff went to in order to try and seek exception to the terms of § 12-297(a). However, Plaintiff does not allege that Sergeant Barclay had anything to do with these efforts, nor is it alleged that Sergeant Barclay took any adverse actions whatsoever against him in connection with his efforts to seek a permit or other exception to § 12-297(a). The sole claims against Sergeant Barclay apparently arise out of the foregoing allegations, though this is

3

uncertain since Sergeant Barclay is not mentioned by name in either of the complaint's two counts, nor in any portion of the prayer for relief.

## II. Argument

### A. Plaintiff's Complaint is an Impermissible Shotgun Pleading

As noted, Sergeant Barclay has been sued in both his official and individual capacities. (Doc. 1, at ¶ 10). Fed. R. Civ. P. 8(a)(2) provides that a complaint filed against a defendant "must contain . . . a **short and plain** statement of the claim showing that the pleader is entitled to relief" (emphasis supplied). "Each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). Similarly, Rule 10 directs that "[i]f doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count." Fed. R. Civ. P. 10(b).

Pleadings that violate either, or both, of these rules are "disparagingly referred to as 'shotgun pleadings.'" Weiland v. Palm Beach Cnty. Sheriff's Office, 792 F.3d 1313, 1321 (11th Cir. 2015); Barmapov v. Amuial, 986 F.3d 1321, 1324 (11th Cir. 2021). The Eleventh Circuit has "little tolerance" for such pleadings, since they "waste scarce judicial resources, inexorably broaden the scope of discovery, wreak havoc on appellate court dockets, and undermine the public's respect for the courts." Vibe Micro, Inc. v. Shabanets, 878 F.3d 1291, 1295 (11th Cir. 2018); see also Barmapov, 986 F.3d at 1327-28 (Tjoflat, J., concurring) ("Our district courts have

4

neither the manpower nor the time to sift through a morass of irrelevant facts in order to piece together claims for plaintiff's counsel.") (citing Cramer v. State of Fla., 117 F.3d 1258, 1263 (11th Cir. 1997) ("Shotgun pleadings, whether filed by plaintiffs or defendants, exact an intolerable toll on the trial court's docket, lead to unnecessary and unchannelled discovery, and impose unwarranted expense on the litigants, the court and the court's parajudicial personnel and resources.")). As a result, a shotgun pleading is tantamount to "obstruction of justice." Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp., 305 F.3d 1293, 1295 n.9 (11th Cir. 2002); see also Jackson v. Bank of Am., N.A., 898 F.3d 1348, 1357 (11th Cir. 2018) ("Tolerating [shotgun pleadings] constitutes toleration of obstruction of justice.").

When faced with such an unacceptable pleading, a defendant should not answer the complaint, as doing so would lead to chaos in discovery. See, e.g., Paylor v. Hartford Fire Ins. Co., 748 F.3d 1117, 1126-27 (11th Cir. 2014) ("A defendant served with a shotgun complaint should move the district court to dismiss the complaint pursuant to Rule 12(b)(6) . . . ."). Rather, the Eleventh Circuit has emphatically stressed that a district court must strike such a pleading, even where a defendant has not requested as much. See, e.g., Jackson, 898 F.3d at 1357-58.

The Eleventh Circuit has recognized multiple varieties of complaints that constitute shotgun pleadings, including but not limited to:

> [1] a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to

> carry all that came before and the last count to be a combination of the entire complaint[;] . . . [2] a complaint . . . replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action[;] . . . [3] one that commits the sin of not separating into a different count each cause of action or claim for relief; and [4] [a pleading that] assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

Weiland, 792 F.3d at 1321-23. "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." Id. at 1323. A pleading that meets just one of these categories should be dismissed. See Barmapov, 986 F.3d at 1325-26.

In this case, Plaintiff's complaint is easily classified as a shotgun pleading under categories 2, 3, and 4, above. Plaintiff does not adopt all allegations of the preceding counts; in fact, *none* of Plaintiff's 152 paragraphs of factual allegations are incorporated into *either* cause of action. (See Doc. 1 ¶¶ 153-157, 158-160). The result is a category 2 shotgun complaint that renders it impossible for Sergeant Barclay to determine *which* of Plaintiff's facts (including a host of allegations about unidentified law enforcement officers) supposedly relate to which particular cause of action asserted against him. Weiland, 792 F.3d at 1321-23 (discussing complaints that are "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"); Wagner v. First Horizon Pharm. Corp.,

464 F.3d 1273, 1279 (11th Cir. 2006) ("The central problem is that the factual particularity of the first 175 paragraphs is not connected to the otherwise generally pled claim in any meaningful way."); Cosmic Kiss v. City of Fort Pierce, No. 09-14024-CIV, 2009 WL 10699125, at *1 (S.D. Fla. Oct. 1, 2009) ("Specifically, Plaintiff's failure to incorporate any factual allegations into its various claims makes it impossible to ascertain which facts relate to each of the separate causes of action."); Bey v. Natures Point Homeowners Ass'n, Inc., No. 1:17-CV-5054-WSD-JKL, 2018 WL 10646908, at *2 (N.D. Ga. Feb. 14, 2018) (classifying plaintiff's complaint as a shotgun pleading in part because she did "not include any clear factual allegations within the various causes of action"); Tonea v. Bank of Am., N.A., 6 F. Supp. 3d 1331, 1342 (N.D. Ga. 2014) (finding that since "the complaint [did] not incorporate by reference any prior factual or legal allegation to link the two together," it was "'virtually impossible to know which allegations of fact are intended to support which claim(s) for relief'") (citing Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll., 77 F.3d 364, 366 (11th Cir. 1996)); Uppal v. Hosp. Corp. of Am., No. 8:09-CV-634-T-33TBM, 2010 WL 3824220, at *2-3 (M.D. Fla. Sept. 27, 2010) (granting defendants' motions to dismiss pursuant to Rules 8(a) and 10(b) since the "factual section of Plaintiff's Amended Complaint [was] not connected to the otherwise generally pled counts in any meaningful way"). This failure alone is

enough to warrant dismissal of Plaintiff's complaint. See Barmapov, 986 F.3d at 1325-26.

Plaintiff's complaint also constitutes a category 3 and 4 shotgun pleading because it fails to separate causes of action against Sergeant Barclay (who, again, has been sued in his individual capacity) from those against the City, and "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions." Weiland, 792 F.3d at 1323. Plaintiff generically points to "Defendants" jointly in both causes of action and simply treats them as one instead of distinct parties. (See Doc. 1 ¶¶ 156-157, 159-160). Counts 1 and 2 of the complaint challenge "Huntsville ordinances" (Doc. 1, at ¶ 154) and "Huntsville's laws, policies, and practices" (id. at ¶¶ 155, 158, 160), but they say nothing about the specific actions of Sergeant Barclay; and, of course, it goes without saying that a mere police sergeant sued in his *individual* capacity (id. at ¶ 10) has no control over the laws or policies of the municipality that employs him.

Plaintiff's collective reference to "Defendants' laws, policies and practices" is particularly devoid of meaning as to Sergeant Barclay since Plaintiff fails to allege how *Sergeant Barclay*, an individual, has laws and policies that are subject to First Amendment review. (See id. at ¶¶ 157, 160). Likewise, Plaintiff confusingly refers to "the actions taken by Defendants . . . on June 26, 2020, July 24, 2020, and August

1, 2020" in his prayer for relief, even though Plaintiff never alleged that Sergeant Barclay was present or that Plaintiff otherwise interacted with him on June 26, 2020. (Id. at ECF 20 (Prayer for Relief at B.)). See also Weiland, 792 F.3d at n.14 (citing Magluta v. Samples, 256 F.3d 1282, 1284 (11th Cir. 2001) ("The complaint is replete with allegations that 'the defendants' engaged in certain conduct, making no distinction among the fourteen defendants charged, though geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of.").

As a result, Plaintiff's imprecise use of "Defendants" does not sufficiently allege what acts each defendant took or how each particular defendant is allegedly liable to him. His continuous and unclear reference to "Defendants" is a hallmark of an impermissible shotgun pleading. See Tran v. City of Holmes Beach, 817 F. App'x 911, 914-15 (11th Cir. 2020), cert. denied sub nom. Tran v. Holmes Beach, FL, No. 20-881, 2021 WL 1725178 (U.S. May 3, 2021) (affirming dismissal of shotgun pleading in which plaintiffs alleged "collective acts and omissions" by defendants without specifying who did what); Ebrahimi v. City of Huntsville Bd. of Educ., 114 F.3d 162, 164 (11th Cir. 1997) (describing a complaint that "offered vague and conclusory factual allegations in an effort to support a multiplicity of discrimination claims leveled against" multiple defendants as a "prototypical 'shotgun complaint'")); Bey, 2018 WL 10646908, at *2 (condemning the plaintiff's complaint

9

as a shotgun pleading since it suggested that "'Defendants' acted wrongly" under the cited legal authority, "but never explain[ed] which defendant took a particular action or why and particular defendant would be liable") (citing Weiland, 792 F.3d at 1323). Accordingly, Plaintiff's complaint should be dismissed as an improper shotgun pleading.

### B.   The Official Capacity Claims Against Sergeant Barclay are Redundant of Those Against the City and Must Be Dismissed

Plaintiff alleges that Sergeant Barclay is "sued in his individual and official capacities." (Doc. 1 ¶ 10). A suit against a public employee in his or her official capacity "is simply 'another way of pleading an action against an entity of which an officer is an agent.'" Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991) (quotation omitted). When a suit names both a city and one of its officials as defendants, the "official-capacity claims against municipal officers should be dismissed, as keeping the claims against both the municipality and the officers would be redundant." See Higdon v.Fulton County, Ga., 746 F. App'x 796, 799 (2018) (citing Busby, 931 F.2d at 776); see also, e.g., McElroy v. City of Birmingham, Ala., 903 F. Supp. 2d 1228, 1242 (N.D. Ala. 2012) (quoting Busby, 931 F.2d at 776) ("When suit is also filed against the local government entity, the court should dismiss the individual defendant in his official capacity as 'redundant and possibly confusing to the [factfinder].'"). As a result, any official capacity claims against Sergeant Barclay are redundant of those asserted against the City and must be dismissed. See

Kennedy v. Avondale Ests., Ga., 414 F. Supp. 2d 1184, 1196 (N.D. Ga. 2005) (dismissing official capacity suits against city officials who were responsible for enforcing allegedly unconstitutional ordinance as duplicative, resulting in plaintiffs "essentially nam[ing] the same defendant multiple times").

### C. The Complaint Fails to Include Sufficient Allegations to State a § 1983 Claim Against Sergeant Barclay Individually

Apart from the fact that the City has already been sued, rendering the official capacity claims against Sergeant Barclay redundant, there is likewise no basis for any individual capacity claims against him. Plaintiff's complaint in this case alleges that "[i]n his *official* capacity, Sgt. Barclay is charged with enforcing Huntsville ordinances." (Doc. 1 ¶ 10) (emphasis added). Yet the *only* facts included in the complaint relate to precisely this activity, *i.e.*, Sergeant Barclay's performance of his official duty of enforcing the City's ordinance prohibiting sound from an amplification system audible from more than 25 feet away. (See id. ¶¶ 103-116). There are no thus factual allegations supporting any claims against Sergeant Barclay in his *individual* capacity.

Capacity to be sued is determined by state law. See Fed. R. Civ. P. 17(b). In Barnhart v. Ingalls, 275 So.3d 1112 (Ala. 2018), the Alabama Supreme Court overruled prior precedent and held that in determining the capacity in which a government employee is properly sued, the courts must look to whether the duties the officers allegedly breached "existed solely because of their official positions."

11

Id. at 1126. That is, the courts must look to the "nature of the action" taken by the employees. Id. In Barnhart, the Court examined a suit brought against officers of the Alabama Space Science Exhibit Commission, alleging that they had failed to pay employees as required by law. Examining the "nature of the action" alleged, the Court held that "the . . . officers were . . . acting *only* in their official capacities when they allegedly breached these duties . . . stated another way, the . . . officers had no duties *in their individual capacities* to give effect to the [wage loss]; rather, any duties they had in that regard existed solely because of their official positions in which they acted for the State.  Accordingly, the individual-capacity claims are, in effect, *claims against the State* . . ." Id. at 1126. (emphasis in original). Thus, Barnhart established a rule that if government employees are sued strictly as a result of actions taken in connection with their performance of official duties, they cannot be sued in their individual capacities, because they had no duties in their individual capacities.

Since its decision in Barnhart, the Alabama Supreme Court has repeatedly applied the "nature of the action" test in subsequent cases to determine whether claims alleged against public officers were official-capacity claims or individual-capacity claims.  See, e.g., Anthony v. Datcher, ___ So.3d ___, 2020 WL 5268468 (Ala. Sept. 4, 2020) (noting that "[t]he key issue [as] whether those . . . claims against [the official] were actually individual-capacity claims or were in fact official-

capacity claims mislabeled as individual-capacity claims," and concluding that because the claims arose out of the defendant-official's official duties, they were necessarily official capacity claims); Meadows v. Shaver, ___ So.3d ___, 2020 WL 6815066 (Ala. Nov. 20, 2020) (applying Barnhart's "nature of the action" test and determining that the duties of the defendant in that case (who was a circuit court clerk) which were allegedly breached existed solely because of the clerk's official position, thus leading to the conclusion that no individual capacity claims could be asserted).

Importantly, federal courts have agreed with this analysis in the specific context of cases where a city official is sued in his individual capacity for simply performing his official duty of enforcing a municipal ordinance. See, e.g., Lea Fam. P'ship Ltd. v. City of Temple Terrace, Fla., No. 8:16-CV-3463-T-30AAS, 2017 WL 1165583, at *9-10 (M.D. Fla. Mar. 29, 2017) (highlighting that neither the parties nor the Court found a case holding "a city official to be personally liable for enforcing a[n] . . . ordinance" that faced a constitutional challenge); Granite State Outdoor Advert., Inc. v. City of Clearwater, Fla., 213 F. Supp. 2d 1312, 1319-20 (M.D. Fla. 2002), aff'd in part, rev'd in part and remanded, 351 F.3d 1112 (11th Cir. 2003) (rejecting the plaintiff's argument that an official "can be personally liable for an allegedly unconstitutional ordinance solely

by virtue of the fact that the official is responsible for the enforcement of the ordinance").

Regardless of the foregoing, the fact remains that there still cannot be any valid claim against Sergeant Barclay in his individual capacity based upon Plaintiff's allegations of Sergeant Barclay's involvement in the events underlying his complaint. On August 1, 2020, when Sergeant Barclay allegedly spoke with Plaintiff regarding the ordinance limiting amplified sound audible from greater than 25 feet (Doc. 1 ¶¶ 103-116), "there was no controlling precedent that this ordinance was or was not constitutional[.]" Michigan v. DeFillippo, 443 U.S. 31, 37 (1979). On the contrary, the Eleventh Circuit, as well as other circuits across the country, have consistently held that police officers may rely on the presumptive validity of statutes and ordinances. See, e.g., Cooper v. Dillon, 403 F.3d 1208, 1220 (11th Cir. 2005) (noting that the officer "was entitled to assume that the current [statute] was free of constitutional flaws"); Harrison v. Deane, 426 F. App'x 175, 180-81 (4th Cir. 2011) (recognizing the wealth of authority for this proposition); Grossman v. City of Portland, 33 F.3d 1200, 1209 (9th Cir. 1994) (noting that "police officers on the street are ordinarily entitled to rely on the assumption that [legislators] have considered the views of legal counsel and concluded that the ordinance is a valid and constitutional exercise of authority")); Connecticut ex rel. Blumenthal v. Crotty, 346 F.3d 84, 105 (2d Cir. 2003) ("Officials charged with enforcing a statute on the books

. . . are generally entitled to rely on the presumption that all relevant legal and constitutional issues have been considered and that the statute is valid."). As the Supreme Court has explained:

> Police are charged to enforce laws until and unless they are declared unconstitutional. The enactment of a law forecloses speculation by enforcement officers concerning its constitutionality—with the possible exception of a law so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws. Society would be ill-served if its police officers took it upon themselves to determine which laws are and which are not constitutionally entitled to enforcement.

DeFillippo, 443 U.S. at 38. Plaintiff's own allegations show that a City officer present reasonably believed that the amplified sound could be heard from more than 25 feet away. (Doc. 1 ¶¶ 86, 97-99, 104, 114-115). Since "the conduct observed violated a presumptively valid ordinance," DeFillippo, 443 U.S. at 37, Sergeant Barclay cannot be held liable simply for enforcing an ordinance he presumed was constitutional. Id. at 38; see also Bridges v. City of Americus, No. 1:09-CV-56 WLS, 2014 WL 1315339, at *5 n.9 (M.D. Ga. Mar. 31, 2014), aff'd (Sept. 18, 2014) ("Because the loitering ordinance had not been ruled unconstitutional at the time of the incident, Defendants cannot be held liable for enforcing it.").

### D.   Sergeant Barclay is Entitled to Qualified Immunity

In any event, Sergeant Barclay is entitled to qualified immunity from Plaintiff's claims against him. While Sergeant Barclay has only been sued for nominal damages, the qualified immunity doctrine still applies. See, e.g., Rowan v.

Harris, 316 F. App'x 836, 838 (11th Cir. 2008) ("Rowan additionally seeks costs and nominal damages. It is abundantly clear on this record that his nominal damages claim will not survive a qualified immunity analysis."); see also Bamdad v. Drug Enf't Admin., 617 F. App'x 7, 9 (D.C. Cir. 2015) ("Bamdad is incorrect in arguing that qualified immunity does not apply to nominal-damages claims."); Atheists of Fla., Inc. v. City of Lakeland, Fla., 779 F. Supp. 2d 1330, 1342–43 (M.D. Fla. 2011) ("Qualified immunity, however, may well protect Defendant Fields from a judgment of nominal money damages."); Wilson v. Moore, 270 F. Supp. 2d 1328, 1355 (N.D. Fla. 2003) ("None of the First Amendment claims made by Plaintiff are founded upon clearly established law. Consequently, the Defendants all have qualified immunity from an award of any damages at all, including nominal damages.").

Officers like Sergeant Barclay, who perform discretionary functions,[2] are entitled to qualified immunity from suit unless their conduct violates "clearly established" law "of which a reasonable person would have known." Mullenix v.

---

[2] Sergeant Barclay was at all times engaged in the performance of job-related duties (*i.e.*, enforcing city ordinances), and was thus acting in a discretionary capacity. See Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1266 (11th Cir. 2004); see also, e.g., Spencer v. Benison, No. 18-14397, 2021 WL 3009182, at *5 (11th Cir. July 16, 2021) (noting that, when evaluating whether an officer acted in a discretionary capacity, the courts must look "to the general nature of [the officer's] action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances.").

Luna, 577 U.S. 7, 11 (2015) (citations and internal quotation marks omitted). Since qualified immunity is "an *immunity from suit* rather than a mere defense to liability," Mitchell v. Forsyth, 472 U.S. 511, 526 (1985), any question surrounding a defendant's entitlement to it should be resolved "at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227 (1991) (*per curiam*). Thus, the defense may be raised and considered on a motion to dismiss; the motion will be granted if the 'complaint fails to allege the violation of a clearly established constitutional right.'" Chesser v. Sparks, 248 F.3d 1117, 1121 (11th Cir. 2001) (quoting Williams v. Alabama State University, 102 F.3d 1179, 1182 (11th Cir. 1997) ); see also, e.g., Denno v. School Board of Volusia County, 218 F.3d 1267, 1275 (11th Cir. 2000); Kyle v. Chapman, 208 F.3d 940, 943 (11th Cir. 2000); Maggio v. Sipple, 211 F.3d 1346, 1355 (11th Cir. 2000) (reversing district court's failure to grant 12(b)(6) motion to dismiss because defendants entitled to qualified immunity). When raised, the burden rests upon the *plaintiff* to overcome the qualified immunity defense. Echols v. Lawton, 913 F.3d 1313, 1319 (11th Cir. 2019). To overcome the defense, the plaintiff must establish that the law enforcement officer's "actions [were] so obviously wrong, in light of preexisting law, that only a plainly incompetent [] official or one who was knowingly violating the law would have done such a thing." Denno v. School Bd. of Volusia County, 218 F.3d 1267, 1272 (11th Cir. 2000); see also D.C. v. Wesby, __ U.S. __, 138 S. Ct. 577, 589 (2018)

17

("This demanding standard protects all but the plainly incompetent or those who knowingly violate the law.").

In this case, Sergeant Barclay is entitled to qualified immunity since Plaintiff cannot show – and has not even alleged – that Sergeant Barclay's actions in enforcing § 12-297(a) violated clearly established law.[3] The requirement that there be clearly established law in order to render an officer liable under § 1983 is intended to protect officers from personal liability for reasonable mistakes made in the course of their already difficult jobs. Furthermore, the leeway given to officers permits them immunity for their mistakes, whether such mistakes are factual *or legal* in nature. Butz v. Economou, 438 U.S. 478, 507 (1978) ("[O]fficials will not be liable for mere mistakes in judgment, whether the mistake is one of fact or one of law."); Eves v. LePage, 927 F.3d 575, 588 (1st Cir. 2019) ("[A] a reasonable mistake of law does not defeat qualified immunity."); Southerland v. Pennsylvania, 389 F. App'x 166, 172 (3d Cir. 2010) ("We protect reasonable mistakes of law because it is sometimes

---

[3] While Plaintiff also bears the burden of establishing that a constitutional right was violated as part of the two-step qualified immunity analysis, the Court need not reach that step, since no clearly established law existed to place Sergeant Barclay on notice that the presumptively constitutional ordinance he enforced was in any way unconstitutional. As a result, this Court may exercise its discretion to address the "clearly established law" prong of the analysis first since it affirmatively resolves the question of Sergeant Barclay's entitlement to qualified immunity and avoids wasting resources on issues not necessary to finding such immunity applies. Pearson v. Callahan, 555 U.S. 223, 236 (2009) ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").

difficult for an officer to determine how the relevant legal doctrine will apply to the factual situation the officer confronts."); see also Scarbrough v. Myles, 245 F.3d 1299, 1303 n.8 (11th Cir. 2001) ("Police officers are not expected to be lawyers or prosecutors.").

As noted above, there was no controlling authority from the United States Supreme Court, the Eleventh Circuit Court of Appeals, or the Alabama Supreme Court at time of his alleged enforcement of § 12-297(a) on August 1, 2020 clearly establishing that such an ordinance was unconstitutional. See Jacoby v. Baldwin Cty., 835 F.3d 1338, 1344 (11th Cir. 2016). In the absence of any such clearly established law holding § 12-297(a) unconstitutional, Sergeant Barclay was entitled to presume as a factual and legal matter that the ordinance *was* constitutional. DeFillippo, 443 U.S. at 37. He was also entitled to rely upon the clearly established law recognizing his *entitlement* to presume the constitutionality of the ordinance as he performed his duties. Cooper, 403 F.3d at 1220 (noting that the officer "was entitled to assume that the current [statute] was free of constitutional flaws"). Sergeant Barclay is therefore doubly entitled to qualified immunity in his individual capacity as to Plaintiff's § 1983 claims against him. See, e.g., id. at 1220-21 (granting enforcing officer qualified immunity since the alleged unlawfulness of statute was not clearly established); Kelley v. City of Fairfield, Ala., No. 2:13-CV-01012-MHH, 2015 WL 4229872, at *4 (N.D. Ala. July 13, 2015) (dismissing claims

19

against individual officers since they were entitled to qualified immunity from §
1983 claims arising from arrest of plaintiff "while enforcing a municipal ordinance
that had not been declared unconstitutional"); May v. Morgan Cty., No. 3:19-CV-82
(CDL), 2020 WL 6435278, at \*4 (M.D. Ga. Nov. 2, 2020) (granting motion for
judgment on the pleadings and finding individual defendants entitled to qualified
immunity from § 1983 claims); LaVelle v. City of Las Vegas, Nevada, 447 F. Supp.
3d 1015, 1028 (D. Nev. 2020) ("[A]n officer who acts in reliance on a duly-enacted
statute or ordinance is ordinarily entitled to qualified immunity.").

Not only was there no clearly established law invaliding § 12-297(a) – a fact
that is sufficient standing alone to entitle Sergeant Barclay to qualified immunity –
ample case law supports the 25-foot rule contained within the former ordinance. See,
e.g., DA Mortg., Inc. v. City of Miami Beach, 486 F.3d 1254, 1268 (11th Cir. 2007)
(ordinance providing that operating a machine or instrument as to be "plainly audible
at a distance of one hundred (100) feet from" place of origin was narrowly tailored);
Pine v. City of W. Palm Beach, FL, 762 F.3d 1262, 1272-74 (11th Cir. 2014) (also
upholding similar 100-foot rule); LaVelle v. City of Las Vegas, Nevada, 447 F.
Supp. 3d 1015 (D. Nev. 2020) (upholding 50-foot rule for amplified sound); Lee v.
Katz, No. CV 00-310-PA, 2004 WL 1211921, at \*2 (D. Or. June 2, 2004) (upholding
25-foot rule).; United States v. Black, No. 09-20093, 2009 WL 2960468, at \*1 (E.D.
Mich. Sept. 11, 2009), aff'd, 448 F. App'x 594 (6th Cir. 2012) (upholding 10-foot

rule). Rather than exhaustively analyzing the constitutional validity of the former ordinance here, Sergeant Barclay simply incorporates by this reference the arguments contained within the brief of the City of Huntsville in support of its separate motion to dismiss.

Finally, even if § 12-297(a) was unconstitutional and *had* been declared unconstitutional as of the dates at issue in this case – and even if such knowledge was chargeable to Sergeant Barclay – he would *still* be entitled to qualified immunity under the facts of the complaint. Under controlling law, an officer's enforcement of the criminal laws is not dependent upon the officer's subjective motivation, nor is the validity of law enforcement action dependent upon the statute relied upon by the officer at the time of the enforcement action. See generally Lee v. Ferraro, 284 F.3d 1188, 1195-96 (11th Cir. 2002) ("When an officer makes an arrest, which is properly supported by probable cause to arrest for a certain offense, neither his subjective reliance on an offense for which no probable cause exists nor his verbal announcement of the wrong offense vitiates the arrest."); Crocker v. Beatty, 995 F.3d 1232, 1244 (11th Cir. 2021) ("The validity of an arrest does not turn on the offense announced by the officer at the time of the arrest."). So long as there was actual *or arguable* probable cause for *some* offense, Sergeant Barclay was entitled to take appropriate enforcement action. Wesby, 138 S. Ct. at 585 n.2 (noting that probable cause for *any*

offense is sufficient); Case v. Eslinger, 555 F.3d 1317, 1327 (11th Cir. 2009) (actual or arguable probable cause sufficient).

The complaint alleges that Plaintiff told officers he was trying to be heard by passing motorists. (Doc. 1, at ¶ 91). It further alleges that someone complained. (Id. at ¶ 102). The complaint states that officers explained that he could be heard 25 feet away (id. at ¶ 104), and that there was a concern about him interfering with passing traffic. (Id. at ¶ 110). In response, Plaintiff allegedly told the officers that "the whole point of his expressive activity is to be heard by passing traffic." (Id. at ¶ 111). Sergeant Barclay is alleged to have then cited Plaintiff's wife for a violation and warned Plaintiff to keep his volume down. (Id. at ¶¶ 105, 115). Under these well-pled facts, Sergeant Barclay clearly had the right to make a full custodial arrest, or take any other appropriate law enforcement action, based upon a violation of an independent Alabama law, Ala. Code § 13A-11-7(a)(2), the state disorderly conduct statute. That law makes it a crime to "make unreasonable noise," and has been upheld multiple times against constitutional attacks. See, e.g., Windham v. City of Fairhope, Ala., 20 F. Supp. 3d 1323, 1337 n.16 (S.D. Ala. 2014), aff'd, 597 F. App'x 1068 (11th Cir. 2015) ("Windham suggests that the 'unreasonable noise' prong of the disorderly conduct statute is or may be unconstitutionally vague. Plaintiff is wrong.") (collecting cases). As to the application of § 13A-11-7(a)(2) to the circumstances of this case:

Several court decisions delineate circumstances where probable cause exists to effect a disorderly conduct arrest for making an unreasonable noise. See <u>Redd v. City of Enterprise</u>, 140 F.3d 1378, 1382-83 & n.4 (11th Cir. 1998) (officers had probable cause to arrest plaintiff for unreasonable noise based upon plaintiff's admission he attempted to be heard over traffic and spoke loudly enough to be heard across the street, and passers-by complained of the loudness); <u>Windham v. City of Fairhope</u>, 597 F. App'x 1068, 1072 (11th Cir. 2015) (plaintiff's repeated yelling at officers and to truck driver on a busy road, even if ultimately insufficient to sustain a conviction under the statute, provided arguable probable cause for officers to arrest her for disorderly conduct by making unreasonable noise); <u>Lewis v. Blue</u>, 774 F.Supp.2d 1164, 1180-81 (M.D. Ala. 2011) (arguable probable cause that plaintiff violated disorderly conduct statute by "recklessly creating a risk" of "public annoyance" by "making unreasonable noise"; although plaintiff was on private property, she admitted she was loud in the use of "profane language that could also be heard on the street, by neighbors, and by anybody passing by"); <u>Hutchins v. City of Alexander City</u>, 822 So.2d 459, 461-62 (Ala. Crim. App. 2000) (affirming a defendant's disorderly conduct conviction pursuant to the unreasonable noise prong based upon his screaming in a police station); <u>Sterling v. State</u>, 701 So.2d 71 (Ala. Crim. App. 1997) (probable cause supporting a disorderly conduct arrest existed when a defendant in a courthouse made unreasonable noise by loudly asking why the sheriff had denied defendant's application for a pistol permit.)

<u>Fuqua v. Hess</u>, No. 3:16-cv-01510-HNJ, 2019 WL 450835, at *8 (N.D. Ala. Feb. 5, 2019). Clearly, the allegations of the complaint in this case gave rise to actual or arguable probable cause to arrest for disorderly conduct under Alabama law. Thus, to the extent that Sergeant Barclay is alleged to have violated Plaintiff's rights by directing him to cease making unreasonable noise in violation of § 12-297(a), Ala. Code § 13A-11-7(a)(2) provided Sergeant Barclay an independent justification for this command. And the existence of that independent justification suffices to entitle

23

Sergeant Barclay to qualified immunity for his law enforcement action. <u>Crocker</u>, 995 F.3d at 1244 ("The validity of an arrest does not turn on the offense announced by the officer at the time of the arrest.").

## III.   <u>Conclusion</u>

For the reasons stated above, Plaintiff's complaint is an impermissible shotgun pleading, contains a redundant official capacity claim, and otherwise fails to state a claim against Sergeant Barclay upon which relief may be granted. Moreover, Sergeant Barclay is clearly entitled to qualified immunity as to Plaintiff's claims. As a result, all claims against Sergeant Barclay must be dismissed with prejudice.

s/ David J. Canupp
David J. Canupp

LANIER FORD SHAVER & PAYNE, P.C.
P. O. Box 2087
2101 West Clinton Avenue, Suite 102 (35805)
Huntsville, AL 35804
Phone: 256-535-1100 / Fax: 256-533-9322
E-mail: djc@LanierFord.com

Attorney for Defendants City of Huntsville and Justin Barclay

## CERTIFICATE OF SERVICE

I certify that on this 16th day of July, 2021 I have filed the foregoing with the Clerk of the Court using the ECF System, which will send notification of such filing to those parties of record who are registered for electronic filing, and further certify that those parties of record who are not registered for electronic filing have been served by mail by depositing a copy of the same in the United States mail, first class postage prepaid and properly addressed to them as follows:

Nathan W. Kellum
CENTER FOR RELIGIOUS EXPRESSION
699 Oakleaf Office Lane, Suite 107
Memphis, TN 38117
Phone: 901-684-5485
Fax: 901-684-5499
Email: nkellum@crelaw.org

Jason Tingle
JAUREGUI & LINDSEY, LLC
244 Inverness Center Dr., Suite 200
Birmingham, AL 35242
Phone: 205-970-2233
Fax: 205-970-3886
Email:  jtingle@jandllawfirm.com

s/ David J. Canupp
David J. Canupp